# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MADALYNE BARNES,       )
)
     Plaintiff,        )
)
     v.                 )     Civil No. 3:22-cv-165
)     Judge Stephanie L. Haines
FESTIVAL FUN PARKS, LLC   )
D/B/A PALACE ENTERTAINMENT   )
(IDLEWILD & SOAKZONE)   )
)
     Defendant.      )

## OPINION

Plaintiff Madalyne Barnes ("Plaintiff") filed a Complaint (ECF No. 1) against Festival Fun Parks, LLC d/b/a Palace Entertainment ("Defendant") alleging violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and The Pennsylvania Human Relations Act (PHRA). The parties disagree on the applicability and viability of the arbitration agreement in this case. Pending before the Court is Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Claims (ECF No. 9).

Based upon the record submitted to the Court by the parties, the Court finds that the parties entered into a valid arbitration agreement, and the arbitration agreement is enforceable. Accordingly, for the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Defendant's Motion (ECF No. 9). The Court will GRANT Defendant's Motion to Compel Arbitration. Plaintiff's claims shall be compelled to arbitration, and this case shall be STAYED and administratively closed pending arbitration. As such, the Court will DENY Defendant's Motion to Dismiss as moot.

I.      **Factual and Procedural Background**

Plaintiff was hired by Defendant as a lifeguard at Idlewild Park and SoakZone in Ligonier, PA in 2018, and faced a hostile work environment due to her sex beginning in July of 2019 (ECF No. 1 at ¶ 7).  Despite being promoted in June of 2020 to lead lifeguard, the Head of Operations at the park began subjecting Plaintiff to demeaning and derogatory slurs in June of 2021 after she began dating another female employee (*Id.* at ¶¶ 8-9).  While Plaintiff reported the comments and what she perceived as physical intimidation to her supervisor, the report was never addressed (*Id.* at ¶ 10). Instead, Plaintiff and the female she was dating were called into a meeting on July 5, 2021, where they were told that they were both being terminated immediately for engaging in insubordination and harassment (*Id.* at ¶¶ 12-13).  Plaintiff then reported the offensive conduct and asked to speak with the Human Resources Director the next day (*Id.* at ¶¶ 13-14).  The meeting between Plaintiff and the Human Resources Director occurred on July 6, 2021, and an investigation of the discriminatory conduct was to ensue (*Id.* at ¶ 14).  On July 14, 2021, Plaintiff received an email from the Human Resources Director informing her that the investigation had concluded and that her termination was confirmed (*Id.* at ¶ 16).

Plaintiff subsequently filed a Complaint with the Equal Employment Opportunity Commission (EEOC) on September 30, 2021 (*Id.* at ¶ 4).  After receiving a Right to Sue letter from the EEOC on June 29, 2022, Plaintiff initiated the instant lawsuit by filing a timely Complaint on September 23, 2022 (*Id.*; ECF No. 1). Plaintiff claims that Defendant's conduct constitutes discrimination and harassment based upon sex and that the termination of her employment constitutes retaliation, violating both Tile VII and PHRA (*Id.* at ¶¶ 18-21, 23-27).

On December 16, 2022, Defendant filed a Motion to Compel Arbitration and Dismiss Plaintiff's claims (ECF No. 9), contending that Plaintiff entered a binding arbitration agreement

that encompassed claims for discrimination, retaliation, and harassment which, therefore, effectively barred Plaintiff's claims. Plaintiff filed her Response in Opposition to Defendant's Motion to Compel Arbitration and Dismiss (ECF No. 11), arguing that Defendant cannot enforce the arbitration agreement because it: 1) lacks assent as an unsigned document, 2) is unconscionable, and 3) violates the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021. Defendant subsequently filed a Reply Brief in Further Support of its Motion to Compel Arbitration and Dismiss (ECF No. 12), producing a declaration by its Director of People and Organization (ECF No. 12-1 at pp. 1-3), a copy of Plaintiff's 2021 Rehire Form (ECF No. 12-1 at pp. 4-6), a copy of the acknowledgement checklist (ECF No. 12-1 at pp.7-8), a copy of the GP Monitoring results for Plaintiff's electronic onboarding (ECF No. 12-1 at pp. 9-11), and a copy of the dated arbitration agreement as support (ECF No. 12-1 at pp. 12-14). The matter is ripe for disposition.

**A. The Arbitration Agreement**

Plaintiff participated in an electronic onboarding process prior to beginning the 2021 employment season at Defendant's theme park (ECF No. 12-1 at p.3, ¶ 7). As part of this electronic onboarding process, Defendant required Plaintiff to review a checklist of forms (ECF No. 12-1 at p. 8) which indicated that reviewing an arbitration agreement was a required part of the onboarding process. This electronic arbitration agreement required Plaintiff to manually insert the date upon completion (ECF No. 12-1 at p. 3, ¶ 9). The abbreviated agreement immediately visible as part of the onboarding process provided, in relevant part, as follows:

> THIS MUTUAL AGREEMENT TO ARBITRATE INCLUDES ANY CLAIMS THAT THE COMPANY MAY HAVE AGAINST THE EMPLOYEE, OR THAT THE EMPLOYEE MAY HAVE AGAINST THE COMPANY OR AGAINST ANY OF ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, SUCCESSORS, OR PARENT, SUBSIDIARY, OR AFFILIATED ENTITIES. THE COMPANY AND EMPLOYEE AGREE THAT ARBITRATION, AS

> PROVIDED FOR IN THIS AGREEMENT SHALL BE THE EXCLUSIVE
> FORUM FOR THE RESOLUTION OF ANY COVERED DISPUTE BETWEEN
> THE PARTIES. IN AGREEEING TO ARBITRATION, BOTH THE COMPANY
> AND EMPLOYEE EXPLICITLY WAIVE THEIR RESPECTIVE RIGHTS TO
> TRIAL BY JURY.

(ECF No. 9-5 at p. 2). Also included on the arbitration agreement's sole page was a note requesting the prospective employee to review the agreement in its entirety by downloading the PDF attachment. *Id.* Regarding the claims covered, the agreement read, in relevant part, as follows:

> THE CLAIMS COVERED BY THIS AGREEMENT INCLUDE, BUT ARE NOT
> LIMITED TO ... CLAIMS FOR DISCRIMINATION, RELATIATION, OR
> HARASSMENT; AND CLAIMS FOR VIOLATION OF ANY FEDERAL,
> STATE OR OTHER GOVERNMENTAL CONSTITUTION, STATUTE,
> ORDINANCE OR REGULATION (COLLECTIVELY, "ARBITRABLE
> DISPUTES").

(*Id.* at p.3). A box requiring a date was placed beside the statement, "I accept and acknowledge the company policy above" and was to be filled in by the employee upon review of the document (ECF No. 9-5 at p. 2).

Defendant argues that under the terms of the arbitration agreement, its Motion to Compel Arbitration should be granted because the claims raised by Plaintiff's Complaint including discrimination, retaliation, and harassment are among those that Plaintiff agreed resolve by mandatory and binding arbitration (ECF No. 9-1 at pp.1-2).

## II.     Legal Standard

The Federal Arbitration Act (FAA) created the "body of federal substantive law establishing ... the duty to honor agreements to arbitrate disputes" and "expressed a strong federal policy in favor of resolving disputes through arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Yet, because the FAA "reflects the fundamental principle that arbitration is a matter of contract," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010), "a judicial mandate to arbitrate must be predicated upon the

parties' consent." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). As such, "if a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citing *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)).

To determine whether a party has agreed to arbitrate and may therefore be compelled to arbitrate under the FAA, the court utilizes a two-part analysis. First, the court must consider if "there is a valid agreement to arbitrate between the parties, and, if so" the court must secondarily determine whether "the merits-based dispute in question falls within the scope of that valid agreement." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 142 (3d Cir. 2022) (quoting *Flintkote*, 769 F.3d at 220)). In addressing whether there is a valid arbitration agreement between the parties, section four of the FAA not only bestows authority upon but requires "a court to decide questions about the formation or existence of an arbitration agreement, namely the element of mutual assent." *MZM Construction Co., Inc. v. New Jersey Building Laborers Statewide Benefit Funds*, 974 F.3d 386, 397-98 (3d. Cir. 2020) (citing *Sandvik AB v. Advent Inter. Corp.*, 220 F.3d 99, 108-09 (3d Cir. 2000)). Only once the court is satisfied that the making of the agreement for arbitration is not in issue may the court proceed to the second prong and adjudicate whether the dispute is governed by the valid arbitration agreement, thereby ruling upon the motion to compel arbitration. *See* 9 U.S.C. § 4; *Guidotti*, 716 F.3d at 771.

Motions to compel arbitration may be reviewed under one of two distinct legal standards depending upon the circumstance, the standard of review provided by the Federal Rules of Civil Procedure in either Rule 12(b)(6) or Rule 56. The Third Circuit clarified in *Guidotti* when each individual standard applies, articulating that "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that a certain of a party's claims 'are subject to an

enforceable arbitration clause,' a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)). However, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then" the Rule 56 standard applies and "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* (quoting *Somerset Consulting*, 832 F.Supp.2d at 482).

When applying the summary judgment standard to a motion to compel, the motion should only be granted if "there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law." *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017) (citing *Century Indem. Co.*, 584 F.3d at 528). Similarly, "only when there is no genuine issue of fact concerning the formation of the agreement" will the court decide as a matter of law whether the parties entered into a valid arbitration agreement. *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). In determining whether a genuine issue of fact has been established, the Supreme Court held that "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts[;] ... where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In this case, Plaintiff did not attach any employment documents to the Complaint or plead any facts in the Complaint related to the arbitration agreement.  Plaintiff has submitted a single brief and Defendant has submitted two briefs in support of their respective arguments on the issue of the Motion to Compel Arbitration and Dismiss.  Both parties have filed several documents and declarations as exhibits for this Court's consideration.  Included in the exhibits submitted to the Court is an arbitration agreement that Plaintiff electronically dated but did not sign (ECF No. 9-5 at pp. 1-3).  Because supporting documents outside the pleading have been submitted to the Court in response to the Motion to Compel Arbitration, the Court will apply the summary judgment standard set forth in Rule 56 to the ample record submitted by the parties.

III.    **Analysis**

The parties' arguments concern both the validity and the enforceability of the dated but unsigned arbitration agreement produced by Defendant as an exhibit to their Motion to Compel Arbitration and Dismiss (ECF No. 9-5 at pp. 1-3).  Plaintiff disputes the validity of the agreement by contending she never assented to the terms of the agreement despite the date placed on the document.  In the event the Court finds mutual manifestation of assent, Plaintiff alternatively contends that the agreement is unenforceable because of its unconscionability and the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021.

A.  **Manifestation of Assent**

When determining whether parties agreed to arbitrate, ordinary state-law principles governing contract formation apply.  *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *MZM Construction*, 974 F.3d at 402.  "Under Pennsylvania law, contract formation requires: (1) a mutual

manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

In assessing an intention to be bound, "the object of the inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d. Cir. 2009) (citing *Ingrassia Constr. Co., Inc. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984). Thus, when a party knowingly and voluntarily executes a contract by signing it, the contract may be binding despite the party's ignorance of the contract's contents. *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d. Cir. 2008) (holding that "in the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English language agreement the offeree executes is enforceable"); *New York Life Ins. Co. v. Kwetauskas*, 63 F.2d 890, 891 (3d Cir. 1933) (setting forth that "an illiterate man may bind himself by contract by negligently failing to learn the contents of an instrument which he has executed"). Though signing a document typically connotes a manifestation of assent, "signatures are not required for a binding contract unless such signing is expressly required by law or by the intent of the parties." *Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 145 (Pa. Super. 2006) (quoting *Shovel Transfer & Storage, Inc., v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999)); *See Am. Eagle*, 584 F.3d at 584. As such, due to the FAA's "substantive command that arbitration agreements be treated like all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447 (2006) (citing 9 U.S.C. § 2), arbitration agreements need not be signed for parties to exhibit a manifestation of intent to be bound by its terms under Pennsylvania

law.  Applying Pennsylvania law to the case at hand, the fact that Plaintiff did not affix her signature to the arbitration agreement does not, in and of itself, imply a lack of mutual assent.

In opposition to Defendant's Motion to Compel Arbitration, Plaintiff contends that she has "no recollection of ever seeing the [arbitration agreement]" and "no recollection of signing or otherwise executing any documents concerning arbitration" (ECF No. 11-1 at ¶¶ 3-4).  In applying the summary judgment standard, facts supported by record evidence are deemed true and "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott*, 550 U.S. at 380 (citing Fed. Rule Civ. Proc. 56(c)).  Thus, though facts may be supported by record evidence and contradict evidence proffered by the opposing party, there are circumstances where such disputes may not amount to a "genuine" dispute of material fact.

In applying the summary judgment standard to motions to compel arbitration, the Third Circuit has held that an "unequivocal denial that the agreement had been made, accompanied by supporting affidavits," would, in most cases be "sufficient to require a jury determination on whether the arbitration agreement was valid." *Guidotti*, 716 F.3d at 778 (citing *Par-Knit Mills*, 636 F.2d at 55).  However, "a party may, in an effort to avoid arbitration, contend that it did not intend to enter into the agreement;" such a "naked assertion" would be "insufficient to place in issue the making of the arbitration agreement." *Id.* (quoting *Par-Knit Mills*, 636 F.2d at 55).  In other words, "federal courts have consistently held that a party's failure to recall a relevant event is insufficient to raise an issue as to the occurrence of that event." *Juric v. Dick's Sporting Goods, Inc.*, No. 2:20-CV-00651-MJH, 2020 WL 4450328, at *9 (W.D. Pa. Aug. 3, 2020) (citing *Gomez v. Rent-A-Ctr., Inc.*, No. 2:18-CV-1528-KM-SCM, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018).  Thus, Plaintiff's contentions that she has "no recollection of ever seeing the [arbitration

agreement]" and "no recollection of signing or otherwise executing any documents concerning arbitration" (ECF No. 11-1 at ¶¶ 3-4) do not amount to an unequivocal denial that the agreement was made and, therefore, are naked assertions insufficient to place in issue the question of assent, or amount to a genuine dispute of material fact.[1]

Because no genuine dispute of material fact was demonstrated, the Court accepts as true the facts supported by record evidence that Plaintiff manually affixed the date of completion on the document beside the statement of assent (ECF No. 12-1 at ¶¶ 8-9; ECF No. 12-1 at p. 13) although she has no remembrance of the act (ECF No. 11-1 at ¶¶ 3-4). In receiving a dated arbitration agreement (ECF No. 12-1 at p. 13) as well as a completed Onboarding Task Acknowledgment form (ECF No. 12-1 at p. 10), a reasonable person would apprehend such conduct as constituting a manifestation of assent. *See Am. Eagle Outfitters*, 584 F.3d at 582. As Plaintiff has not contested the arbitration agreement's formation regarding whether the terms are sufficiently definite or whether valid consideration was exchanged, these items are not at issue and need not be addressed by the Court. Therefore, the Court finds the arbitration agreement valid.

## B. Unconscionability

Section 2 of the FAA establishes that an arbitration agreement may be declared unenforceable "upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. This clause therefore permits arbitration agreements "to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563

---

[1] Further, it may be noted that where there is an electronic record, the party in opposition has a difficult burden to establish a genuine dispute of material fact; in circumstances "where plaintiffs denied agreeing to arbitration but electronic records proved otherwise, courts have rejected those challenges as a basis to deny contract formation." *Juric*, 2020 WL 4450328, at *10; *E.g., Scott*, 550 U.S. at 380; *Matthews v. Gucci*, No. CV-21-434-KSM, 2022 WL 462406, at *7 (E.D. Pa. 2 Feb. 15, 2022); *Keller v. Pfizer, Inc.*, No. 1:17-CV-1883, 2018 WL 5841865, at *4 (M.D. Pa. Nov. 8, 2018); *Schrock v. Nomac Drilling, LLC*, No. 2:15-cv-1692, 2016 WL 1181484, at *3 (W.D. Pa. Mar. 28, 2016).

U.S. 333, 339 (2011) (internal quotation marks omitted) (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).   In determining whether an arbitration agreement is unconscionable, state contract principles generally apply; however, "the FAA preempts conflicting state rules." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Concepcion*, 563 U.S. at 341-42).   To prove unconscionability under Pennsylvania law, the party challenging the agreement bears the burden of proof to show that the contract was both substantively and procedurally unconscionable. *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 53 (Pa. Super. 2017) (citing *Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 119, 129 (Pa. 2007)).

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language," and "substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).   While both substantive and procedural unconscionability must be present for a contract to be held unconscionable, Pennsylvania has implemented a type of "sliding-scale approach" where if procedural unconscionability is very high, substantive unconscionability is required to a lesser degree. *Kohlman v. Grane Healthcare Co.*, 279 A.3d 42, 48 (Pa. Super. 2022) (citing *Salley*, 925 A.2d at 125 n.12).   While a determination of unconscionability turns on facts, it remains a question of law. *See id.* at 47 (citing *Salley*, 925 A.2d at 124).

In Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration and Dismiss, Plaintiff contends that the arbitration agreement should be unenforceable as it is both procedurally and substantively unconscionable (ECF No. 11 at p. 6).   Plaintiff suggests that the

arbitration agreement is procedurally unconscionable because she did not have a meaningful choice whether to accept the agreement, (ECF No. 11 at p. 6), and that it is substantively unconscionable because it prohibits class and collective actions and eliminates the EEOC and PHRC's ability to facilitate recovery or relief (ECF No. 11 at p. 7).  The Court will address the issues of procedural unconscionability and substantive unconscionability in turn.

## 1. Procedural Unconscionability

Plaintiff contends that the arbitration agreement is procedurally unconscionable, citing four circumstances as support: 1) she does not have a copy of the arbitration agreement despite keeping all documents provided to her (ECF No. 11-1 at ¶ 5); 2) no one at Idlewild mentioned or explained the arbitration agreement (ECF No. 11-1 at ¶ 6); 3) she was not afforded an opportunity to review the arbitration agreement with counsel (*Id.*); and, 4) she was not given an opportunity to negotiate other terms (*Id.*).

"Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language ... [as well as] material, risk-shifting contractual terms which 'are not typically expected by the party who is being asked to assent to them and often appear in the boilerplate of a printed form." *Harris*, 183 F.3d at 181 (internal quotation marks omitted) (citing *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145-46 (Pa. Super. 1985).  Thus, courts deem a contract "procedurally unconscionable when [it is] formed through 'oppression and unfair surprise'" and consider factors in making a determination such as: the take-it-or-leave-it nature of the standardized form of the document, the parties' relative bargaining positions, and the degree of economic compulsion motivating the adhering party.  *Quilloin* 673 F.3d at 235-36 (internal quotation marks omitted) (citing *Salley*, 925 A.2d at 125).

Arbitration agreements as a condition of employment are not presumed procedurally unconscionable but are instead "routinely held ... valid and enforceable against the employee." *Keller*, 2018 WL 5841865, at *4 (citing *Smaller v. JRK Residential Mgmt. Corp.*, No. 16-cv-2066, 2017 WL 616742, at *3 (E.D. Pa. Feb. 15, 2017); *Wilson v. Darden Rest., Inc.*, No. 99-cv-5020, 2000 WL 150872, at *11 (E.D. Pa. Feb. 11, 2000); *Lepera v. ITT Corp.*, No. 97-cv-1461, 1997 WL 535165, at *4 (E.D. Pa. Aug. 11, 1997)). This aligns with the "strong federal policy [Congress has enacted] in favor of resolving disputes through arbitration," *Century Indem. Co.*, 584 F.3d at 522, which presumes written arbitration agreements are valid unless evidence is introduced to the contrary, in accordance with grounds which exist at law or in equity for the revocation of the contract. *See* 9 U.S.C. § 2. As such, unconscionability remains available as a "defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract," *Harris*, 183 F.3d at 181, but "the party challenging the contract provision bears the burden of proving unconscionability." *Id.*; *Salley*, 925 A.2d at 119, 129; *Cardinal*, 155 A.3d at 53.

Mere inequality of bargaining power between employers and employees is not sufficient to find arbitration agreements *per se* unconscionable. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). Instead, a case-by-case analysis must occur to determine whether the bargaining power was so disparate as to call into question the procedural conscionability. *Compare Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 266 (3d Cir. 2003) (finding a multinational crane company's arbitration agreement with crane operators who had received a limited education and had narrow options for other employment procedurally unconscionable), *with Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, (3d Cir. 2008) (holding that an arbitration clause in an employment contract was not procedurally unconscionable based upon unequal bargaining power where the employee was a Harvard-educated economist with an extensive

resume and multiple offers of employment at the time of acceptance).  While an opportunity to review an arbitration agreement with counsel may lessen the inequality of bargaining power between employers and employees, a lack of opportunity to review an arbitration agreement with counsel does not render such an agreement *per se* procedurally unconscionable.  *See generally Quillion*, 673 F.3d at 236-37; *Zimmer*, 523 F.3d at 229; *Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222, 229 (3d Cir. 1997).

Plaintiff has not raised a genuine dispute of material fact as to why the arbitration agreement is procedurally unconscionable.  Though Plaintiff states in her declaration that she does not have a copy of the arbitration agreement despite keeping all documents provided her and that no one at Idlewild mentioned or explained the arbitration agreement (ECF No. 11-1 at ¶¶ 5-6), this does not raise a genuine dispute regarding Defendant's record supported evidence that the arbitration agreement was provided to Plaintiff as a PDF attachment, not as a physical copy, as part of Plaintiff's electronic onboarding (ECF No. 9-4 at ¶¶ 8-9).  Additionally, Plaintiff states that she was not afforded an opportunity to review the arbitration agreement with counsel or to negotiate other terms (ECF No. 11-1 at ¶ 6).  As discussed below, these facts do not tip the factors determining procedural unconscionability in favor of Plaintiff.

In applying the undisputed facts to the three factors which determine procedural unconscionability, 1) the take-it-or-leave-it nature of the standardized form of the document, 2) the parties' relative bargaining positions, and 3) the degree of economic compulsion motivating the adhering party, *Quillion* 673 F.3d at 235-36, the first factor favors Plaintiff as she was afforded no opportunity to negotiate the terms of the arbitration.  However, regarding the remaining two factors, no facts were raised demonstrating that an above average inequality existed between the employer and employee's bargaining power or that there was economic compulsion motivating

the adhering party. Thus, the factors weigh in favor of the Defendant and the arbitration agreement is not procedurally unconscionable.

### 2. Substantive Unconscionability

Plaintiff cites two terms of the arbitration agreement in alleging substantive unconscionability, 1) the prohibition on class and collective actions (ECF No. 9-5 at ¶ 3) and 2) the agreement to arbitrate "all rights to any form of recovery or relief" which may be awarded by the EEOC or any state agency (ECF No. 9-5 at ¶ 4).

Substantive unconscionability refers to contractual terms and may be established where the terms of the contract unreasonably favor the party asserting the agreement. *See Quilloin*, 673 F.3d at 230. In essence, a contract is substantive unconscionability if it "creates an arbitration process that favors one party over another." *Johnson v. West Suburban Bank*, 225 F.3d 366, 378 n.5 (3d Cir. 2000). Conversely, "an arbitration agreement *cannot* be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum.'" *Quilloin*, 673 F.3d at 230  (*emphasis added*) (citing *Edwards v. Hovensa, LLC*, 497 F.3d 355, 364 (3d Cir. 2007)).

In *Quilloin*, the Third Circuit examined a Pennsylvania law which held class action waivers in arbitration agreements as substantively unconscionable where "class action litigation [wa]s the only effective remedy." *Quilloin*, 673 F.3d at 232 (citing *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 883-84 (Pa. Super. 2006). In light of the Supreme Court's ruling in *Concepcion*, the Third Circuit held that "the Pennsylvania law prohibiting class action waivers is surely preempted by the FAA." *Quilloin*, 673 F.3d at 232 (citing *Concepcion*, 563 U.S. 333). As such, the Supreme Court and the Third Circuit have made clear that contractual terms mandating individualized arbitration at the expense of class action lawsuits or class arbitration further the purpose of the FAA and are

15

not, in and of themselves, substantively unconscionable. *See Id.*; *Concepcion*, 563 U.S. at 344-46. Thus, the exchange of class actions for individualized arbitration set forth in the arbitration agreement in question here is not substantively unconscionable.

Plaintiff alleges that the arbitration agreement "eliminates the EEOC and PHRC's ability to facilitate any form of relief" (ECF No. 11 at p.7). The arbitration clause cited by Plaintiff does not eliminate the EEOC or PHRC's ability to facilitate recovery but instead submits the question of the employee's right to any form of recovery and relief to arbitration. The clause states, "this mutual agreement does not limit Employee's right to file an administrative charge with the ... Equal Employment Opportunity Commission, or any state agency, but Employee agrees to arbitrate under this Agreement all rights to any form of recovery or relief." (ECF No. 9-5 at p. 3, ¶ 4). In this way the arbitration agreement did not impose restrictions upon Plaintiff's ability to submit charges to either entity or eliminate the possibility of receiving any form of recovery. The challenged clause instead requires submission of the amount of recovery or relief to individualized arbitration between the parties.

While the Supreme Court has set forth that the EEOC is not precluded from pursuing equitable relief in court even when the claim is a derivative of an employment dispute governed by an arbitration agreement, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297-98 (2002) (citing *Gilmer*, 500 U.S. at 32), the arbitration agreement here does not attempt to limit the EEOC's ability to pursue equitable remedies in court. Rather, the terms of the agreement simply individualize the employee's recovery and submit that question to arbitration. Arbitration agreements that subject claims to individualized arbitration cannot be held substantively unconscionable so long as there is mutual assent and the agreement or term "does not alter or limit the right and remedies available to a party in the arbitral forum." *Quillon*, 673 F.3d at 230 (citing *Hovensa, LLC*, 497 F.3d at 364).

As the second term Plaintiff cites as substantively unconscionable does not alter or limit the right and remedies available to Plaintiff in the arbitral forum, the cited term does not render the agreement substantively unconscionable.

Therefore, Plaintiff has raised no genuine dispute of material fact regarding either substantive or procedural unconscionability. As there is no such dispute and the undisputed facts supported by record evidence do not support a finding of unconscionability, the arbitration agreement remains enforceable.

## C. Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021

Plaintiff contends that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFASASHA) applies to her case, rendering the arbitration agreement unenforceable and that Defendant's Motion to Compel Arbitration and Dismiss should be denied as a result. For the foregoing reasons, the Court disagrees.

Effective March 3, 2022, the EFASASHA directly amended the FAA to provide a carve out for persons alleging sexual assault and sexual harassment to forgo arbitration upon their election. 9 USCA § 402(a). This provision provides, in pertinent part:

> **(a) In general**.—Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute ... no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

*Id.* The Act applies to predispute arbitration agreements and defined such agreements as follows:

> **(1) Predispute arbitration agreement**. – The term "predispute arbitration agreement" means any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement.

9 USCA § 401(1).  A historical note entitled "Effective and Applicability Provisions" was attached to the Act and provided the sole outline of the Act's applicability. The note provides in pertinent part:

> This Act, and the amendments made by this Act shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act.

Pub. L. 117-90, § 3, Mar. 3, 2022, 136 Stat. 28.

In the case at hand, the dispute giving rise to Plaintiff's claim occurred just under two years prior to the Act's effective date of March 3, 2022.  While the alleged dispute arose and Plaintiff filed a Complaint with the EEOC prior to the effective date (ECF No. 1, at ¶ 5), Plaintiff filed a timely Complaint with this Court on September 23, 2022 (ECF No. 1), after the Act became effective.  As such, whether the EFASASHA applies to Plaintiff's claims depends upon the meaning of the Act's applicability note.

Plaintiff asks this Court to adopt an interpretation of the EFASASHA that would apply its provisions when a Complaint is filed after the Act's effective date, regardless of when the dispute or claims arose or accrued.  This interpretation is most strongly proffered by the California Court of Appeal in a case where its determination of the Act's applicability had no bearing on the outcome of the case because the plaintiff had filed her Complaint approximately one year before the Act was enacted. *Murrey v. Superior Court*, 87 Cal.App.5th 1223, 1235 (Cal. Ct. App. 2023). The only other support which may be offered for this interpretation comes from *Steinberg v. Capgemini Am., Inc.*, No. 22-489, 2022 WL 3371323, at *2 (E.D. Pa. 2022).  Here the Court analyzed the applicability of the EFASASHA and stated, "the relevant date of the 'claim or dispute' is at the latest when the case itself was filed. However, the *Steinberg* Court clarified the purpose of this statement in a footnote where it wrote, "the Court need not determine if the actual trigger date for a 'claim or dispute' 'arising and accruing' is the date of 1) filing of the case or 2)

the act of harassment itself" because "the result here is the same even with the later, and thus more generous, interpretation. *Id.* at n.2. As such, the Court in *Steinberg* was simply indicating that even given the latest plausible date, the EFASASHA did not apply to the plaintiff's claims. This interpretation would, in effect, render "dispute" and "claim" synonymous with "case" as it would "arise" and "accrue" synonymous with "filed." Congress penned both "case" and "filed" in 9 USCA § 402(a) and specifically chose not to include those specific terms in Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022). Because "when Congress includes particular language in one section of a statute but omits it in another," it is "presume[d] Congress intended a difference in meaning," *Digital Realty Trust, Inc. v. Somers*, 138 S.Ct. 767, 777 (2018) (quoting *Loughrin v. U.S.*, 134 S.Ct. 2384, 2390 (2014)) this Court rejects this interpretation.

Instead, this Court adopts a reading of the applicability note which most closely accords with related caselaw, traditional legal definitions, and rules of statutory interpretation. In separating and distinguishing "dispute" and "claim" by placing them in the disjunctive, Congress provided a spectrum relative to the EFASASHA's applicability. A dispute arises when the conduct which constitutes the alleged sexual assault or sexual harassment occurs. As such, if the conduct occurred after March 3, 2022, the Act would clearly apply. Conversely, as traditionally held, a claim accrues when the plaintiff has a complete and present cause of action. *Gabelli v. SEC*, 568 U.S. 442, 448-49 (2013) (internal quotation marks omitted) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Thus, if the claim accrues after the effective date of the Act, the Act applies prospectively even though the violations occurred prior to March 3, 2022. Such an interpretation holding that a claim's accrual refers to the most far-reaching date of EFASASHA's applicability has been affirmed by several other District Courts adjudicating this issue and may be seen in the emphasis on determining the accrual date when the events occurred before the Act's effective date. *See*

*Olivieri v. Stifel, Nicolaus & Co., Inc.*, 21-CV-0046 (JMA)(ARL), 2023 WL 2740846, at *6 (E.D.N.Y. Mar. 31, 2023); *Johnson v. Everyrealm, Inc.*, No 22 Civ. 6669 (PAE), 2023 WL 221673, at *17-18 (S.D.N.Y. Feb. 24, 2023); *Marshall v. Human Services of Se. Tex., Inc.*, No. 1:21-CV-529, 2023 WL 1818214, at *3 (E.D. Tex. Feb. 7, 2023); *Zinsky v. Russin*, No. 2:22-cv-547, 2022 WL 2906371, at *3 (W.D. Pa. July 22, 2022); *Newcombe-Dierl v. Amgen*, No. CV 22-2155-DMG (MRWx), 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022).  In addition to these decisions, well established caselaw regarding statutory interpretation and the meaning of language chosen by Congress direct the Court to adopt this interpretation.[2]

As always, "we begin by analyzing the statutory language." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010).  Congress chose to place "dispute" and "claim" in the disjunctive, separating and distinguishing each noun from the other.  The definition of each word indicates the reason for this choice.  A dispute is "[a] conflict or controversy, esp[ecially] one that has given rise to a particular lawsuit," *Silverman*, 2023 WL 2480054, at *2 (citing Black's Law Dictionary (11th ed. 2019)), while a "claim" is "the assertion of an existing right; any right to payment or to an equitable remedy." *Johnson*, 2023 WL 221673, at *17 (citing Black's Law Dictionary (11th ed. 2019)).

These definitions differentiate dispute and claim by the point in time they come into existence, indicating that a dispute is an underlying conflict which will later give rise to the lawsuit while a

---

[2] The Court recognizes that an alternative interpretation has been adopted by some district courts under which the traditional legal meaning of "accrues" is defined as the point at which the plaintiff has a complete and present cause of action-the latest date being when the plaintiff's employment is terminated, *see, e.g., Hodgin*, 2023 WL 2751443, at *2; *Silverman*, 2023 WL 2480054, at *2; *Walters*, 623 F.Supp.3d at 338, and dispute is broadly construed as coinciding with the date a victim files charges with a governing state or federal agency. *See Hodgin v. Intensive Care Consortium, Inc., No. 22-81733-CV-MIDDLEBROOKS, 2023 WL 2751443, at *2 (S.D. Fla. Mar. 31, 2023); Silverman v. DiscGenics, Inc.*, No. 2:22-cv-00354-JNP-DAO, 2023 WL 2480054, at *2 (D. Utah Mar. 13, 2023); *Walters v. Starbucks Corp.*, 623 F.Supp.3d 333, 338 (S.D.N.Y. 2022). While the Court rejects this interpretation, it does note that even under this broad scope of applicability, the EFASASHA would not apply in the instant case. Plaintiff filed with the EEOC on September 30, 2021 (ECF No.1 at ¶ 4), 154 days prior to the effective date of EFASASHA. As such, even if this interpretation were adopted, the Court's conclusion would remain unchanged.

claim refers to an existing right which may be the object of a lawsuit.  Such an interpretation of "dispute" comports with its use in 9 USCA § 401(1).  Here, Congress defines a predispute arbitration agreement as an "agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." *Id.*  This section does not support defining dispute as the filing of a Complaint with a governing agency as that may result in a predispute arbitration agreement being formed after the discriminatory conduct occurs although prior to the filing of a Complaint with an administrative agency.  Instead, the use of dispute in this context clearly refers to the discriminatory conduct underlying the Complaint, requiring the arbitration agreement to be entered into prior to the dispute--the discriminatory conduct.  Thus, Congress, in this note, has painted a full picture of the lifespan of a cause of action from inception to maturity.  A claim necessitates an underlying dispute.  In this way, a dispute sparks the potential for a later claim and is, in a sense, the inception of a cause of action.  Likewise, a claim is mature, or complete and present, capable of being asserted as an existing right once the conflict or controversy has ceased to develop.

The verbs chosen by Congress further color this illustration.  While arise indicates beginning and is defined as "to begin to occur or exist: to come into being or to attention," Merriam Webster, https://www.merriam-webster.com/dictionary/arise (last visited June 16, 2023), "a claim accrues when the plaintiff has a complete and present cause of action." *Gabelli*, 568 U.S. at 448-49; *See Graham Cty.*, 125 S.Ct. at 2450.  Therefore, a dispute arises when the conduct complained of occurs.  This date must occur after March 3, 2022, for the EFASASHA to apply in accordance with basic prospective applicability.  However, the date a claim accrues allows the Act to prospectively apply to disputes which occurred prior to enactment, furnishing the outer boundary of claims to which the EFASASHA may apply.  Because the accrual of claims acts as the limitation

upon how far into the past the Act may adjudicate prior disputes, it must be determined whether the standard definition of "accrue" comports with Congressional intent.

In 1954, the United States Supreme Court examined whether the date of accrual referred to the "date a right to sue came into existence or ... the date the Act [in question] became effective." *U.S. v. Lindsay*, 346 U.S. 568, 569 (1954). The *Lindsay* Court explained that though some lower courts had refused to recognize the traditional meaning of accrued as when the right to sue came into existence, instead giving "accrued" a special meaning as a term of art referring to the date a new statute of limitations became effective through an Act's enactment, these courts only applied the deviant definition to avoid retroactivity. *Id.* at 569-71. However, the Supreme Court refused "to stretch the word 'accrued' beyond its ordinary meaning" and declined to expand the Act's retroactivity when the legislative history failed to show that the altered meaning was suggested to Congress before its passage. *Id.* at 570-71.

From the time the EFASASHA was introduced in the House as Proposed Bill HR4445 on July 16, 2021, until it was passed by the Senate on February 10, 2022, no alterations were made to "Sec. 3. Applicability" which eventually became Pub. L. 117-90, § 3, Mar. 3, 2022, 136 Stat. 28. *Compare* 117th Congress, 2nd Session (2022), *with* 117th Congress, 1st Session (2021). During this time, discussions as to the retroactivity of the Act in Congress were almost non-existent. The discussions that did occur were centered around the few allegations that the Act was retroactive, but these discussions seem to indicate that the Act would apply to arbitration agreements signed prior to the Act's passage only when the sexual harassment or sexual assault claims were prospective, arising or accruing after the passage of the act. *See* 168 Cong. Rec. S624-01 (2022) (Senator Schumer stated before the Senate "[the Act] not only affects the future but affects those who *signed* in the past") (*emphasis added*); 168 Cong. Rec. H983-09 (2022) (Representative

Griffith stated before the House, "but I will also tell you that there has been an allegation that it is retroactive-and that is not accurate-as to cases currently pending. It is accurate as to contracts currently signed"). In this way, the discussions in Congress and the plain language of the statute indicate that Congress did not intend to apply the Act retroactively and, instead, chose to temper the sea change in enforcing arbitration agreements through prospective applicability. *Zinsky* 2022 WL 2906371, at *4. Such prospective applicability comports with this Court's interpretation of the Act's applicability and the traditional definition of accrual.

Though "a claim accrues when the plaintiff has a complete and present cause of action," *Gabelli*, 568 U.S. at 448-49, the date of accrual for a claim under EFASASHA depends upon whether the plaintiff alleges isolated violations or a continuing violation of civil rights laws. When the plaintiff alleges isolated violations, the claim accrues when the plaintiff knows of her injuries. This often is concurrent with the discriminatory action in the cases of sexual assault and sexual harassment. Conversely, when the plaintiff is alleging a continuing violation of civil rights laws the latest date for accrual is either the adverse employment action, such as the termination of employment, or the plaintiff's injury. *See Del. State College v. Ricks*, 449 U.S. 250, 257 (1980); *Newcombe-Dierl*, 2022 WL 3012211 at *5 (C.D. Cal. May 26, 2022).

In the case at hand, Plaintiff's claims do not fall under the exemption to the FAA set forth in the EFASASHA. Even if Plaintiff's claim of sexual harassment is viewed as a continual violation culminating in a discriminatory discharge, the dispute arose in July 2019 when the discriminatory conduct began, and at the latest, her claim accrued on July 14, 2021, the date her employment was terminated. Thus, the EFASASHA will not apply as a bar to Defendant's Motion to Compel Arbitration under the facts alleged in the Complaint and the record referenced in the parties' submissions.

### D. Scope of the Arbitration Agreement

As Plaintiff's challenges to the formation of the arbitration agreement do not place the making of the arbitration agreement in issue, the Court may proceed to the second prong and determine whether the dispute is governed by the arbitration agreement. 9 U.S.C. § 4; *See Guidotti*, 716 F.3d at 771. "In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability." *Century Indem. Co.*, 584 F.3d at 524 (citing *AT&T Techs. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)). This presumption is particularly applicable when the clause is broad, but in applying this presumption, a court is not to rule on the potential merits of the underlying claims. *AT&T Techs.*, 475 U.S at 649-650. Therefore, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) (quoting *AT&T Techs. Inc.*, 475 U.S. at 650).

In her Complaint, Plaintiff alleged sex discrimination, harassment, and retaliation (ECF No. 1 at p.5). The arbitration agreement specifically indicates that it covers claims of "discrimination, retaliation, or harassment; and claims for violation of any federal, state or other governmental constitution, statute, ordinance, or regulation" (ECF No. 9-5 at p. 3, ¶ 2). Therefore, there is no way to interpret the clause so that it does not cover the disputes raised by Plaintiff, and Plaintiff must arbitrate her claims.

### B. Conclusion

For the reasons set forth herein, the Court will GRANT IN PART and DENY IN PART Defendant's motion. Defendant's Motion to Compel Arbitration is GRANTED. Plaintiff's claims are compelled to arbitration and this case shall be STAYED and administratively closed pending

arbitration.  The Court will DENY Defendant's Motion to Dismiss as moot. An appropriate Order will follow.

DATE: June 27, 2023

Stephanie L. Haines
United States District Judge

cc/ecf: All counsel of record